# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-1608

_____

United Transportation Union,    *

      *

      Appellee,    *

      *    Appeal from the United States

      v.    *    District Court for the

      *    Western District of Missouri.

The Kansas City Southern Railway    *

Company,    *

      *

      Appellant.    *

_____

Submitted:  November 19, 1998
Filed:  March 31, 1999

_____

Before McMILLIAN, WOLLMAN, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

The Kansas City Southern Railway Company (KCS) appeals from the district court's grant of declaratory and injunctive relief in favor of the United Transportation Union (UTU) under the Railway Labor Act (RLA).  See 45 U.S.C. §§ 151-188 (1994).  We vacate the district court's order, and we remand the case.

# I. Background

This case stems from a labor dispute at a Kansas City railroad switching yard known as the "Joint Agency." The KCS and I & M Rail Link (I & M) jointly own and operate the switching yard. KCS and I & M workers in the yard make up and break up trains, transfer cars between customers, and service the many industries located within the Joint Agency. The UTU represents certain KCS employees who work in the Joint Agency.

The KCS and the Chicago, Milwaukee, St. Paul and Pacific Railroad (the Milwaukee Road) created the Joint Agency with Interstate Commerce Commission (ICC) approval in the early 1940s. Each ended up a joint owner of the yard with joint operating rights over its rails. (Appellant's App. at 37.) Both the KCS's and the Milwaukee Road's employees worked at the Joint Agency. Two of the UTU's predecessor unions separately represented certain KCS and Milwaukee Road employees who worked in the Joint Agency. The ICC's January 17, 1942, order approving the establishment of the jointly owned yard spoke to the labor relationships involved, as well as considering the effect on interstate commerce due to the creation and operation of the Joint Agency. "The employees of the [Kansas City] Southern and the Milwaukee assigned to the joint agency will be subject to the bargaining agreements between the two companies and the various labor brotherhoods, unless, of course, a separate agreement is negotiated with the agency." (Id. at 29.) The ICC found

> that the coordination of the [Kansas City] Southern and Milwaukee track and terminal facilities, through joint ownership and joint operation, will be mutually profitable to them and also will improve their services to the public. We are not impressed by the protestants' [the Railway Labor Executives' Association and seven railway-employee organizations] objections to the method by which the Milwaukee and the [Kansas City] Southern propose to render freight service in the Kansas City area through

2

their proposed joint-agency arrangement. No doubt [the Kansas City Southern and the Milwaukee] and their employees can satisfactorily adjust any difficulties which may arise.

(Id. at 34.)

In 1945, the KCS and the Milwaukee Road entered into a separate labor agreement (the 1945 Agreement) with these predecessor labor organizations covering the unions' workers in the Joint Agency. The agreement allocated the work and specifically permitted crews from either the KCS or the Milwaukee Road to work anywhere within the yard. This arrangement remained in effect for forty years. In or around 1985, the Soo Line Railroad (Soo) purchased much of the Milwaukee Road, including its ownership interest in the Joint Agency. The UTU represented Soo's employees in the Joint Agency as well as KCS's employees, and so both the Soo and the KCS continued to assign work crews pursuant to the 1945 Agreement. In late 1996, it became apparent that I & M was going to acquire the Soo's interest in the Joint Agency. The Brotherhood of Locomotive Engineers (BLE) represents I & M's employees in the Joint Agency. According to the UTU, the I & M employees represented by the BLE earn 30 percent less than the KCS employees represented by the UTU. (See id. at 125.)

In August 1997, the UTU filed the instant suit seeking declaratory and injunctive relief under the RLA, 45 U.S.C. §§ 151-188. The UTU claims that I & M's decision not to recognize the UTU as the representative of I & M's yard workers renders the 1945 Agreement null and void. In fact, the UTU's General Chairman's position before the district court was that the Joint Agency itself no longer exists. (Id. at 117-18; see also id. at 60) ("It is . . . my position that the I&M is precluded from any and all Joint Agency operations . . . ."). According to the UTU, without the 1945 Agreement, there can be no commingling of KCS and I & M employees in the Joint Agency. On January 5, 1998, the district court held a preliminary injunction hearing. The UTU put on one

3

witness—Robert Martin, General Chairman of the UTU. The district court permitted KCS to cross-examine Mr. Martin, and further permitted both parties to argue the merits of their respective positions. Before KCS put on its witness, however, the court terminated the hearing and concluded that this case presented a major dispute under the RLA, and requested the UTU's lawyers to draw up a status quo order.

## II. Discussion

Labor relations between the KCS and the UTU are governed by the RLA, 45 U.S.C. §§ 151-188. The RLA obligates unions and employers to negotiate disputes. Sheet Metal Workers' Int'l Ass'n v. Burlington N. R.R., 893 F.2d 199, 202 (8th Cir. 1990) (citing 45 U.S.C. § 152 First and Second general duties). "If negotiation fails . . ., the dispute takes one of two courses, depending upon whether the dispute is characterized as major or minor." Id. (footnote omitted). Whether a dispute is "major" or "minor" can be of critical procedural and jurisdictional importance.[1] Minor disputes follow an administrative resolution process, and the parties must submit their differences to the National Railroad Adjustment Board for final arbitration. See 45 U.S.C. § 153(i). Conversely, in major disputes "the parties are obligated to maintain the status quo" while they pursue "a lengthy process of bargaining and mediation." Consolidated Rail Corp. v. Railway Labor Executives' Ass'n, 491 U.S. 299, 302 (1989). Thus, if the dispute between the KCS and the UTU is minor, the district court lacked jurisdiction to enter the status quo injunction and the case should have been referred to an adjustment board. On the other hand, if the case is major, a status quo order was appropriate. See id. at 303 ("The district courts have subject-matter jurisdiction to enjoin a violation of the status quo pending completion of the required

---

[1] "The terms major and minor dispute do not appear in the RLA itself. Instead, they are judicially-created nomenclature for the statutory categories." Sheet Metal Workers', 893 F.2d at 202 n.2 (citing Elgin, J & E. Ry. v. Burley, 325 U.S. 711, 723-24 (1945)).

4

procedures, without the customary showing of irreparable injury."). <u>See</u> <u>also</u> <u>Sheet Metal Workers'</u>, 893 F.2d at 202 (noting that the carrier is not required to maintain the status quo in minor disputes).

There is no bright line rule for differentiating between major and minor disputes. The issue is "often a question of degree and turns upon the facts in each case." <u>Id.</u> (quotation and citation omitted). In general, "major disputes seek to create contractual rights, minor disputes to enforce them." <u>Consolidated Rail</u>, 491 U.S. at 302. Major disputes involve questions relating to the formation of, or efforts to secure, labor agreements. <u>Sheet Metal Workers'</u>, 893 F.2d at 202 (citing <u>Elgin, J. & E. Ry.</u>, 325 U.S. at 723). Major disputes "'look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.'" <u>Brotherhood of Maint. of Way Employees, Lodge 16 v. Burlington N. R.R.</u>, (<u>Lodge 16</u>), 802 F.2d 1016, 1021 n.3 (8th Cir. 1986) (quoting <u>Elgin, J. & E. Ry.</u>, 325 U.S. at 723-24). In contrast, minor disputes involve the interpretation of existing agreements. <u>Sheet Metal Workers'</u>, 893 F.2d at 202-03.

"Characterizing the nature of the dispute 'depends on whether it is arguably comprehended within the agreement of the parties.'" <u>Id.</u> at 203 (quoting <u>Lodge 16</u>, 802 F.2d at 1022). In making "this determination, the court must determine the terms of the agreement." <u>Id.</u> "The parties' agreement includes the written collective-bargaining agreement and [the parties'] past practices." <u>Id.</u> It is important to stress, however, that the court "need not interpret the terms of the agreement." <u>Id.</u> The purpose of the inquiry, rather, "is to determine whether [the] case implicates a question of contract interpretation." <u>Id.</u> (quotations and citations omitted).

Once a court determines the terms of the parties' agreement, it must then determine whether the particular dispute is comprehended within that agreement. "Verbal formulations of this [inquiry] have differed over time and among the Circuits: phrases such as 'not arguably justified,' 'obviously insubstantial,' 'spurious,' and

'frivolous' have been employed." Consolidated Rail, 491 U.S. at 306 (footnote omitted). See also Sheet Metal Workers', 893 F.2d at 203 (collecting and summarizing the various standards and formulations). For example, a case is deemed minor if the railroad's assertion that the dispute implicates a question of contract interpretation is not obviously insubstantial. The differences between these formulations is not critical, each "'illustrate[s] the relatively light burden which the railroad must bear' in establishing exclusive arbitral jurisdiction under the RLA." Consolidated Rail, 491 U.S. at 307 (quoting Lodge 16, 802 F.2d at 1022). With these standards in mind, we turn to the parties' positions and the district court's order.

## A.    The Parties' Positions

The KCS views this case as a dispute governed by at least one of two labor agreements—either its existing labor agreement with the UTU or the 1945 Agreement. Thus, according to the KCS, this is a minor dispute. The UTU, on the other hand, characterizes this dispute as being about the existence (or lack thereof) of a labor agreement that allows commingling of workers in the Joint Agency. According to the UTU, such a dispute would be a major dispute under the RLA.

The KCS argues that even if the 1945 Agreement is no longer in force, "work in the Joint Agency yard is subject to the respective labor agreements between KCS and its employees, and between I & M Rail Link and its employees." (Appellant's Br. at 16.) The KCS contends that under its labor agreement with the UTU (and with the UTU's predecessors), the KCS has always retained the right to assign its employees to work on its property. According to the KCS, the demise of the 1945 Agreement would merely eliminate the restrictions associated with that agreement, and leave the underlying labor agreement, along with the right to assign employees, intact.

Conversely, the UTU contends that paragraphs 8 and 9 of the 1945 Agreement reflect the sole authority for commingling employees within the Joint Agency. The

6

UTU asserts that the underlying KCS-UTU labor agreement simply does not cover the present labor situation. Thus, according to the UTU, if the 1945 Agreement is no longer in effect, the parties' dispute involves the lack of a labor agreement, and as such, must be a major dispute within the meaning of the RLA.

Both sides to this dispute have blown hot and cold on the issue of whether the 1945 Agreement remains in effect. In a January 3, 1997, letter to the KCS, the UTU took the position (contrary to the position it takes now) that irrespective of the proposed purchase by I & M of the Soo's interest in the Joint Agency, the UTU fully expected the KCS "to continue to comply with the terms of the April 13, 1945 accord . . . ." (Appellant's App. at 57.) In a letter to the UTU dated May 29, 1997, the KCS stated that "at the present time it is our view that for a number of reasons the April 13, 1945 Memorandum of Agreement . . . is null and void." (Id. at 61.) Before the district court, the KCS took the opposite view about the viability of the 1945 Agreement.

## B.    The District Court's Order

The district court issued its order on January 29, 1998, and declared the 1945 Agreement null and void in view of I & M's decision not to recognize the UTU as the representative of I & M's yard employees. See United Transp. Union v. The Kansas City S. Ry. Co., No. 97-1132-CV-W-9-8-SOW, slip op. at 2 (W.D. Mo. Jan. 29, 1998). According to the district court, because the 1945 Agreement is null and void, any argument that this case presents only a minor dispute must be "obviously insubstantial." Id. In particular, the district court found that "[KCS's] argument that continuing to assign work as if the April 13, 1945 Coordination Agreement is still in effect is justified by the April 13, 1945 Coordination Agreement is, therefore, 'obviously insubstantial.'" Id. Based on its findings, the district court enjoined the KCS

from continuing to operate as if the 1945 Agreement were still in effect, and ordered the KCS to restore the status quo as it existed prior to the 1945 Agreement. Id. at 3-4.[2]

## C.    Analysis

We will not reverse the district court's grant of an injunction unless it "'clearly erred in its characterization of the facts, made a mistake of law, or abused its discretion in considering the equities.'" Sheet Metal Workers', 893 F.2d at 201 (quoting Lodge 16, 802 F.2d at 1020). Whether an injunction should issue, however, depends on whether the dispute is major or minor; this is a question of law that we review de novo. Id.

We first note that neither I & M nor the union representing its employees in the Joint Agency (the BLE) is a party to this litigation.

As we read the district court's order and the record of the preliminary injunction hearing, it appears to us that the court misapprehended the KCS's argument. The order reflects an erroneous belief that the KCS's argument hinges entirely on the continued viability of the 1945 Agreement. Due to this error, the district court concluded that because the 1945 Agreement no longer exists, the parties' dispute must be major. That interpretation of the KCS's position, however, excludes the possibility that the dispute might be resolved by interpreting the existing KCS-UTU labor agreement.[3] Indeed,

_____

[2] The district court consolidated the UTU's motion for a preliminary injunction with the trial on the merits pursuant to Fed. R. Civ. P. 65(1)(2). KCS argues that the district court abused its discretion in this regard. We do not address this issue in view of our decision to remand this case.

[3] As noted above, the federal court does not actually interpret the parties' agreement. Rather, a federal court's task in this regard is merely to decide whether the parties' dispute may be resolved by interpreting the agreement. Sheet Metal Workers', 893 F.2d at 203.

"whether 'the employer's action can be <u>arguably</u> justified under the terms of an existing agreement'" is one of three factors we have used to determine whether a dispute is comprehended within an agreement. <u>Id.</u> at 203 (quoting <u>International Ass'n of Machinists v. Soo Line R.R.</u>, 850 F.2d 368, 376 (8th Cir. 1988)) (emphasis supplied). It is clear from the transcript of the preliminary injunction hearing that the KCS did not rest its case entirely on the continued viability of the 1945 Agreement, but argued with equal intensity that its existing labor agreement with the UTU would apply. The district court's order does not address that argument at all. Thus we conclude that the district court legally erred when it failed to fully consider all of the potential existing agreements that might govern the present dispute.

It is worth remembering that the KCS faces only a minimal burden of proof in establishing the minor nature of this dispute. Further, "[w]hen the surrounding circumstances are ambiguous, the courts favor construing disputes as minor." <u>Alton & S. Lodge No. 306 Brotherhood Ry. Carmen v. Alton & S. Ry.</u>, 849 F.2d 1111, 1113 (8th Cir. 1988), <u>cert. denied</u>, 492 U.S. 905 (1989). <u>See also</u> <u>Brotherhood of Locomotive Eng'rs v. Atchison T. & St. F. Ry.</u>, 768 F.2d 914, 920 (7th Cir. 1985 ("when in doubt, the courts construe disputes as minor"). Upon our review of the present record, it appears to us that the surrounding circumstances are ambiguous. That ambiguity, however, is due, at least in part, to the rather thin record in this case. Hence, we cannot say with a sufficient degree of legal certainty that this is a minor dispute within the meaning of the RLA. Nor can we, for the reasons expressed above, affirm the district court's conclusion that the dispute is a major one. Accordingly, we must vacate the district court's order, and remand the case for further proceedings.

In deciding the ultimate issue of whether this is a major or minor dispute, the district court should fully consider the terms of the existing KCS-UTU labor agreement. <u>See</u> <u>Sheet Metal Workers'</u>, 893 F.2d at 203. If upon considering the existing labor agreement the district court should again conclude that this is a major dispute, then a status quo order detailing what the status quo was would be appropriate.

9

### III. Conclusion

In summary, we find that the district court erred in not fully considering the possibility that the parties' dispute could be resolved by an interpretation of one or more existing labor agreements. Consequently, we vacate the district court's order granting injunctive relief and remand the case for further proceedings consistent with this opinion. Because we remand this case, we need not reach the KCS's other arguments on appeal.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

10